In Re Liquidation of Walton Bank & Trust Company, Respondent, v. American Hereford Cattle Breeders, Appellant.—129 S. W. (2d) 1090.

Kansas City Court of Appeals. June 19, 1939.

*Charles P. Woodbury, Paul S. Kelly* and *Johnson, Garnett & Quinn* for appellant.

1244

*H. E. Sheppard* for respondent.

SPERRY, C.—American Hereford Cattle Breeders Association, whom we will call petitioner, sought a preferred claim against the assets of Walton Bank & Trust Company, a defunct banking corporation, whom we will call respondent. The circuit court allowed petitioner a common claim and denied it a preference. From the order denying the preference, petitioner has appealed.

The case is here on an agreed statement of facts and the sole question presented is whether or not the claim should have been allowed as a preference.

Respondent is the successor of the Missouri State Bank and of the Walton Trust Company, which institutions were merged on May 6, 1931. It operated under restrictions from March 15, 1933, until it suspended business May 9, 1934. It engaged in the general banking business and also carried on the business of the Walton Trust Company, to which it succeeded, such business consisting, in part, of making loans on real estate and of selling said loans to investors. Petitioner had been an investor of the Walton Trust Company and after the merger it continued such relationship with respondent. Respondent sold mortgage loans and as a part of the consideration for the purchase price thereof it collected the interest and principal of said loans for investors, making no charge therefor, and it looked after leasing and collecting rentals on foreclosed lands owned by investors, charging a fee for such services. Petitioner carried no checking account with respondent, but two accounts to its credit were carried for years in the mortgage department with the knowledge, but not with the specific consent, of petitioner.

The first such account resulted from collections of interest and principal of loans and from collections of income from property serviced by respondent for petitioner, less the amounts paid out by respondent, from time to time, for taxes, insurance, abstract fees, and other expenses of a like nature. The ledger sheet of respondent, covering this account, is included in the record before us, and covers a period of time beginning July 7, 1931, and ending March 15, 1933, and shows collection and credit of sixty-two items, ranging in amounts of from $2.20 up to the sum of $1500. The balance on hand July 7, 1931, was $1879. Collections accumulated therein until, on September 30, 1931, the balance was $2911.54, which was remitted in full to petitioner. The account began to accumulate again on October 6, 1931, and ran until July 3, 1932, when the balance then on hand was remitted in full. It again began accumulating on July 11, 1932, and continued until August 23, 1932, when the entire balance was remitted. On August 25, 1932, it began accumulating and ran until February 3, 1933, when the entire balance was remitted. The balance which accumulated after the last mentioned date, and which was on hand from and after February 25, 1933, less an item paid out March 15, 1933, was the sum of $1931.25.

Respondent also carried, in its mortgage department, another account for petitioner, which is referred to by the parties as the oil royalties account. Petitioner was the owner of a note and mortgage on certain Oklahoma lands, purchased from Walton Trust Company, which mortgage note became delinquent as to interest in 1927. In April, 1930, respondent collected some oil royalties on this land and in June, 1930, petitioner advanced the sum of $1416.68, which, together with oil royalties previously collected, was used by respondent to pay the accumulated back taxes on the land. Thereafter respondent

continued to collect royalties and, in July, 1930, it wrote petitioner that it had collected $57.60 in royalties "now held in trust fund to be applied as part reimburement to you for advancement of taxes". Such royalties continued to accumulate in this fund, by monthly collections, until March, 1933. During this period respondent paid out of said collections two items, one for insurance and one for oil tax, and, on March 15, 1933, there was a net balance in this account, due petitioner, in the amount of $925.75.

The items mentioned in the last two preceding paragraphs total the sum of $2856.98, and were carried in the *mortgage* department of respondent. The record does not disclose that these funds were *deposited* by respondent to the credit of petitioner, in the sense generally recognized, but merely that an account of receipts and disbursements was kept in the *mortgage* department of respondent. The record discloses that petitioner never at any time *drew* on either account, or *checked* on same, or that it had the right or power so to do. All withdrawals from these accounts were by remittance from respondent to petitioner on account of these accounts were made by respondent.

It is petitioner's contention that the agreed statement of facts discloses that the original relationship existing between the parties is one of principal and agent, growing out of the acts of the agent in looking after its principal's business, in the matter of collecting interest, rents, royalties, etc., and in paying taxes, insurance, abstract fees etc.; that the relationship did not begin by the deposit of any funds, but by reason of petitioner entrusting respondent with collections growing out of investments purchased from it; that, since the original relationship was that of principal and agent, all funds collected by respondent were thereafter held in trust for petitioner until remitted; and that this relationship could not be changed by the acts of respondent alone in failing to remit promptly upon collection, but that it required the positive consent of petitioner in agreeing or consenting to any claimed changed relationship.

Respondent contends that the relationship of principal and agent, as between a bank and another doing business with it, may be changed to relationship of debtor and creditor if the bank is permitted to withhold collections made in its capacity as agent, for an indefinite time, and to use same and commingle same with its general assets with the knowledge of its principal. Respondent contends that this is what occurred here, and that because petitioner permitted respondent to retain money collected for long periods of time it has waived any claim to a preference it might have had, based on the original relationship. In its argument respondent concedes that the original relationship was that of principal and agent and it follows that, unless that relationship was changed to one of debtor and creditor petitioner is entitled to a preference.

Respondent relies strongly on Greene County Building & Loan

Ass'n v. Cantley, 62 S. W. (2d) 931, l. c. 932. In that case a preference was denied, but the court stated that the bank received payments of customers of plaintiff at its windows, under an arrangement whereby said payments were *deposited* to the credit of plaintiff, and that *"plaintiff had the sole right to draw against the fund so deposited,* but no checks were drawn at any time except the monthly draft and commission check." [l. c. 942.] (Italics ours.) In the case at bar no *deposit* was ever made by *petitioner,* and it is not shown that *any* deposit on the *banking* side of respondent's business was ever made by any one. In the concluding paragraph of the above opinion said: "Had the bank collected the money, and held the same intact as a trust fund, the result would have been different." That case differs from the case at bar.

The second Missouri case relied on by respondent is that of Missouri Utilities Company v. Scott County Bank, 62 S. W. (2d) 933. There, too, collections made for plaintiff were, by arrangement, *deposited* to the account of *plaintiffs* and were, *by it,* withdrawn. Here no deposit on the general *banking* books was ever made, nor did petitioner ever withdraw, or attempt to withdraw any funds. Remittances were always made by respondent. That case is, also different, on the facts, from the one at bar.

The third and last Missouri case relied on by respondent is that of In re Citizens Bank of Senath, 96 S. W. (2d) 526. In that case the court said, l. c. 529:

"The implication from Stuart's testimony is that it was worth more than the one per cent charged for making the collections, and that this extra payment was made by the National Life Company in permitting the bank to retain *and use* the money a while before remitting. This witness, on this point, said: 'Under our arrangement with the bank they are allowed to carry those premiums until the end of the month in order to save expense and make it possible for them to handle it on the fee we could pay.'

"It is our conclusion that when, under this arrangement, which was nothing less than a *contract that the bank could use the company's money* for the balance of the month, the money after being collected and not immediately remitted, lost its identity as a trust fund and became money *held* by the bank, *under a contract,* and after being so held by the bank under that *contract to hold,* the relation of debtor and creditor was created, and that the bank held those funds as it held funds for other general creditors." (Italics ours.)

From the facts appearing in that case it is apparent that the court denied the preference because petitioner there, and the bank, had a *contract* whereby money collected for petitioner by the bank would be retained and used by the bank until the end of the current month, during which time it would be commingled with the banks general fund and treated by as its own property. No such agreement existed

in the case at bar. Respondent here was authorized only to collect and remit.

Furthermore, there is no showing, so far as the first account herein described is concerned, that petitioner had any way of knowing, or learned, when collections were actually made for it, and the inference from the facts is that it did not learn that any collections had been made, nor the amount or source thereof, until respondent forwarded its statement from time to time together with remittance for the balance on hand. Therefore since originally the relationship of creditor and debtor was not created, but merely that of principal and agent, nothing that respondent did, of which petitioner was wholly ignorant, could bind petitioner to a changed relationship. The act of respondent in failing to make prompt remittance upon collection is not shown to have been known to or authorized by petitioner. If failure to remit promptly after collection be sufficient to effect a change of relationship, then petitioner's knowledge of and consent to respondent's unreasonable delay in remitting are necessary if petitioner is to be bound by such delay. [Deal v. Bank of Smithville, 52 S. W. (2d) 201.]

When we turn to the oil royalties account we find that there, too, the original relationship established between the parties was that of principal and agent. That conclusion is further supported by the contents of the letter, heretofore quoted, wherein respondent advised that it had collected and was holding a certain amount in trust for a specific purpose. The only inference to be drawn from that letter and statement, and the silence of petitioner, is that petitioner consented to such an arrangement. Therefore, the relationship of *cestui que trust* and trustee came into existence by agreement. Such an agreement is binding and may be proved by parol evidence. [In re Liquidation of Fidelity Bank & Trust Company, 77 S. W. (2d) 480, l. c. 482.] The money was collected and held for a specific purpose, to-wit: to refund the amount advanced by petitioner for taxes. It cannot be said that the relationship of creditor and debtor was thus created. To so hold would be to hold in conflict with and contrary to all of the evidence on the question. This fund, by mutual agreement, became a fund "to be held for a specific purpose" and the bank could not "change its character by wrongfully placing it to the credit of the depositor in his general checking account" unless done with petitioners knowledge and consent and with the right in petitioner to draw against it for all purposes. [In re Central Trust Company of St. Charles, 68 S. W. (2d) 919, l. c. 921.] There is no showing here that petitioner had any authority to check or draw on the account or that he ever attempted to do so; nor was it placed to his credit, with or without his consent, in the *banking* department of respondent but was credited on the books of the *trust* side of the respondent's two-fold business.

We hold that the facts establish that all funds involved herein are trust funds; that same swelled the assets of respondent which came into the hands of the liquidator; and that the trial court erred in denying petitioner a preference.

The judgment should be reversed and the cause remanded with directions to the trial court to set aside the original judgment, in so far as the same denied petitioner a preference on its claim herein, and to enter up a judgment allowing the same as a preferred claim. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with directions to the trial court to set aside the original judgment, in so far as the same denied petitioner a preference on its claim hrein, and to enter up a judgment allowing the same as a preferred claim. All concur.